# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Motorscope, Inc.,

        Plaintiff,        Civ. No. 12-1296 (SRN/AJB)

  v.

Precision Tune, Inc., et al.,     **MEMORANDUM OPINION AND ORDER**

        Defendants.

---

J. Michael Dady and Kristy L. Zastrow, Dady & Gardner, PA, 80 South Eighth Street, Suite 5100, Minneapolis, Minnesota 55402, for Plaintiff.

Eric L. Yaffe and Julia Claire Colorusso, Gray Plant Mooty Mooty & Bennett PA, 600 New Hampshire Avenue, N.W., Suite 700, Washington, District of Columbia 20037, and Ashley M. Bennett Ewald, Gray Plant Mooty Mooty & Bennett, PA, 80 South Eighth Street, Suite 500, Minneapolis, MN 55402, for Defendants.

---

SUSAN RICHARD NELSON, United States District Judge

This matter is before the Court on a Motion to Dismiss, Stay, or in the Alternative, to Transfer Venue to the Eastern District of Virginia filed by Defendants Precision Tune, Inc., Precision Tune Auto Care, Inc., and Precision Franchising LLC (collectively "Precision Franchising"). (Doc. No. 2.) For the reasons that follow, and as stated at the hearing, the Motion is denied.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Precision Franchising is the licensor of the Precision Tune Auto Care system. (Cert. of Frederick Simmons, Doc. No. 5-1, ("Simmons Cert.") ¶ 2.) Precision Franchising is wholly owned by Precision Tune Auto Care, Inc. ("PTAC") and licenses

1

the rights to operate automotive service businesses identified with the PTAC service mark and related logos. (Id.) Precision Franchising's principal place of business is in Leesburg, Virginia. (Id.) Motorscope, Inc. is a Minnesota corporation that acts as an area developer for Precision Franchising. (Compl., Doc. No. 1, ¶¶ 3, 7–8.)

The parties entered into an Area Franchise Agreement ("Area Agreement") on October 3, 1978. (Simmons Cert. ¶ 4; Aff. of Mindy Hanson, Doc. No. 15 ("Hanson Aff."), ¶ 4; Compl. ¶ 7.) Under the Area Agreement, Motorscope promised to sell service center franchises in Minnesota and certain designated counties in North Dakota and South Dakota. (Simmons Cert. ¶ 4; Compl. ¶ 8.)

In April 2005, Motorscope assumed an existing Franchise Agreement to operate a PTAC franchise in Columbia Heights, Minnesota ("Center 030-03"). (Hanson Aff. ¶ 7.) Subsequently, in November 2006, Motorscope agreed to transfer the franchise to Big D's Auto Works ("Big D's") under a purchase agreement. (Id. ¶ 8.) The transfer was contingent upon obtaining Precision Franchising's approval. (Id.) Precision Franchising approved the transfer and Big D's signed a new Franchise Agreement in 2006 at Precision Franchising's request. (Id.) Big D's then defaulted and Motorscope regained possession of Center 030-03 in April 2010. (Id.) Motorscope has been operating the location under the 2006 Franchise Agreement signed by Precision Franchising and Big D's. (Id. ¶ 9; Compl. ¶ 10, Ex. B.)

On April 22, 2010, Motorscope requested Precision Franchising's approval to sell the Center 030-03 franchise to Cary Lene-Tarango, a manager of another Precision Franchising franchise. (Hanson Aff. ¶ 10; Compl. ¶ 11.) Motorscope entered into a

Purchase Agreement with Lene-Tarango. (Id.) Under the Purchase Agreement, Lene-Tarango managed the franchise, but the actual transfer of the Franchise Agreement was contingent upon Precision Franchising's approval. (Hanson Aff. ¶ 12; Compl. ¶¶ 11, 15.)

Precision Franchising denied the transfer and Motorscope ceased all negotiations with Lene-Tarango. (Hanson Aff. ¶ 15; Compl. ¶¶ 14–15.) On January 12, 2011, Motorscope and Lene-Tarango both signed a document acknowledging that Lene-Tarango "has never been a Precision Tune Auto Care franchisee, and that [he] has [never] presented [himself] to the public as such franchisee." (Hanson Aff. ¶ 15.)

On April 17, 2012, Precision Franchising sent Motorscope a Notice of Termination, Notice of Expiration, and Non-Renewal for Motorscope's Area Agreement and a Notice of Termination for the Center 030-03 Franchise Agreement, both terminating Motorscope's Agreements with Precision Franchising effective October 15, 2012. (Id. ¶ 16; Compl. ¶¶ 17–18, Exs. C–D.) The Notice of Termination for the Franchise Agreement stated that Precision Franchising was terminating that agreement because of Motorscope's unauthorized transfer of the Franchise Agreement to Lene-Tarango. (Hanson Aff. ¶ 17; Compl. ¶¶ 18, 20, Ex. D; Simmons Cert. ¶ 8.) Precision Franchising also stated that the Area Agreement had expired on its own terms on June 6, 1984. (Hanson Aff. ¶ 17; Compl. ¶ 19, Ex. C.)

Precision Franchising sent Motorscope an "Offer of Settlement and Compromise" on April, 17, 2012, giving Motorscope the opportunity to enter into a new area agreement to continue operating as an area director and managing the Center 030-03 franchise. (Hanson Aff. ¶ 20, Ex. 2.) The terms of the new agreement differed from the previous

Area Agreement. (Id.) Notably, Motorscope alleges that the new agreement allows Precision Franchising to terminate it at will. (Id. at ¶ 21; Simmons Cert. ¶ 12, Ex. D.) The settlement letter informed Motorscope that the offer would be available for ten days, until April 28, 2012. (Simmons Cert. ¶ 11, Ex. D.)

The parties entered into a Standstill Agreement while discussing settlement possibilities. (Dady Aff. ¶¶ 9–10; Simmons Cert. ¶ 12.) The Standstill Agreement stated that "[a]fter May 18, 2012, both parties would have all rights to commence any action they had as if the Standstill Agreement had never been entered into[.]" (Dady Aff. ¶ 10.) After unsuccessful attempts to resolve the dispute, the parties agreed to an extension of the standstill period until May 30, 2012 at 5:00 p.m. EDT. (Id. ¶ 12.)

The parties were unable to reach an agreement before the Standstill Agreement expired. (Id.) On May 30, 2012, at 5:01 p.m. EDT, Motorscope filed this lawsuit in this Court seeking an injunction and declaratory relief, or in the alternative, damages resulting from Precision Franchising's termination of the Franchise Agreement and Area Agreement. (Id. ¶ 14.) Specifically, in Count I of its Complaint, Motorscope claims that Precision Franchising violated the Minnesota Franchise Act by terminating Motorscope's contracts without good cause and without giving them an opportunity to cure any alleged defaults. (Compl. ¶¶ 25–36.) Count II alleges that Motorscope's termination is a breach of the Area Agreement, the Franchise Agreement, and the implied covenant of good faith and fair dealing. (Id. ¶¶ 37–49.) Finally, Count III alleges that Precision Franchising's conduct resulted in unjust enrichment. (Id. ¶¶ 50–51.)

One day later, on May 31, 2012, Precision Franchising filed an action concerning the same underlying events in the Eastern District of Virginia seeking declaratory relief and damages (hereinafter "the Virginia Action"). (Simmons Cert. ¶ 16, Ex. I; E.D. Va. Civ. Action No. 12-599.) In the Virginia Action, Precision Franchising seeks: (1) damages for Motoroscope's breach of the two contracts; (2) a declaratory judgment that the Area Agreement has expired by its own terms; and (3) a declaratory judgment that good cause existed for the termination of the Area Agreement and the Franchise Agreement. (Simmons Cert. ¶¶ 16, Ex. 1 at ¶¶ 36–47.) On June 13, 2012, Precision Franchising moved to dismiss, stay, or transfer this action. (Doc. No. 2.) On June 28, 2012, Motorscope moved to dismiss, stay, or transfer Precision Franchising's Virginia Action. (E.D. Va. Civ. Action No. 12-599.)

## II. DISCUSSION

### A. Motion to Dismiss or Stay

Precision Franchising argues that this Court should dismiss or stay the action pending the resolution of the Virginia Action. It is well established that in cases of "concurrent jurisdiction, the first court in which jurisdiction attaches has priority to consider the case." Orthmann v. Apple River Campground, Inc., 765 F.2d 119, 121 (8th Cir.1985). This is known as the "first-filed rule." See id. The first-filed rule is not "rigid, mechanical, or inflexible" and the court applies it to serve the interests of justice. Id. It exists "[t]o conserve judicial resources and avoid conflicting rulings" and absent compelling circumstances, "the first-filed rule gives priority, for purposes of choosing among possible venues when parallel litigation has been instituted in separate courts, to

5

the party who first establishes jurisdiction." Nw. Airlines, Inc. v. Am. Airlines, Inc., 989 F.2d 1002, 1006 (8th Cir. 1993). Duplicative litigation in the federal courts should be avoided to prevent the unnecessary expenditure of scarce judicial resources. See Colo. River Water Conservation Dist. v. United States, 424 U.S. 800, 817 (1976).

"The prevailing standard is that in the absence of compelling circumstances, the first-filed rule should apply." Nw. Airlines, 989 F.2d at 1005 (citation and internal quotation marks omitted). The Eighth Circuit has noted several factors that may justify a court's refusal to apply the first-filed rule, including: (1) the first-filing party acted in bad faith; (2) the first-filing party raced to the courthouse to preempt a suit by the second-filing party when they were on notice that the second-filing party was going to imminently file suit; and (3) the first-filing party's suit was for declaratory judgment. See, e.g., Anheuser-Busch, Inc. v. Supreme Int'l Corp., 167 F.3d 417, 419 (8th Cir. 1999); Nw. Airlines, 989 F.2d at 1007; Clergy Fin., LLC v. Clergy Fin. Servs.,Inc., 598 F. Supp. 2d 989, 994 (D. Minn. 2009).

Precision Franchising contends that this Court should dismiss or stay this action under an exception to the first-filed rule. (Defs.' Mem. of Law in Supp. of its Mot. to Dismiss, Stay, or Transfer Pl.'s Compl. ("Precision Franchising's Mem."), Doc. No. 4, p. 11.) Precision Franchising argues that Motorscope filed this action in bad faith. (Id. at p. 12.) It claims that "Motorscope filed the Minnesota action one minute after the expiration of the party's standstill agreement" in an attempt "to preempt Precision Franchising's choice of forum." (Id.) (emphasis in original.) Precision Franchising also argues that because Motorscope seeks a declaratory judgment, Motorcope's claims "are

6

purely defensive." (Id. at p. 15.)  Since Precision Franchising's contract with Motorscope will not terminate until October 15, 2012, Precision Franchising further claims that Motorscope has suffered no harm.  (Id.)

In response, Motorscope contends that when a standstill agreement ends, the party that files first is not acting in bad faith and is entitled to an application of the first-filed ruled.  It cites Meru Networks, Inc. v. Extricom Ltd., where the parties filed nearly simultaneous suits in different jurisdictions after a termination of a standstill agreement.  No. 10-cv-02021, 2010 WL 3464315, at *1 (N.D. Cal. Aug. 31, 2010).  The plaintiff in the first suit moved to dismiss, transfer, or stay the second suit (which had been filed nine hours later) based on the first-filing rule.  Id.  The court granted the motion to dismiss, recognizing that there was no bad faith when "both parties filed suit as quickly as possible upon termination of the standstill agreement."  Id. at *2.  Motorscope also contends that its complaint is not "defensive" as suggested by Precision Franchising because it seeks injunctive relief to prevent the termination and an award of damages for the termination.  See Clergy Fin., 598 F. Supp. 2d at 994 (applying the first-filed rule where the plaintiff had claims for injunctive relief, damages, and declaratory relief).

The Court finds that there are no compelling circumstances to deviate from the first-filed rule here.  Like in Meru Networks, Motorscope did not act in bad faith or race to the courthouse by filing its Complaint in this Court after the expiration of the Standstill Agreement.  There is no evidence to suggest that Motorscope did not negotiate in good faith with Precision Franchising in an attempt to avoid court intervention.  Motorscope never promised or indicated that it would not commence a lawsuit against Precision

Franchising if the parties were unable to reach an agreement. Motorscope properly waited until the Standstill Agreement had expired before filing this action. Even Precision Franchising recognizes that "the standstill agreement contemplated that both parties would have the right to file suit." (Defs.' Reply Mem. in Supp. of Mot. to Dismiss, Stay, or Transfer Pls.' Complaint, Doc. No. 18, at p. 3.)

Moreover, Motorscope's Complaint is not defensive because it seeks more than just declaratory relief. Motorscope alleges that Precision Franchising terminated its Franchise Agreement and Area Agreement in violation of the Minnesota Franchise Act, and that Precision Franchising breached these Agreements as well as the implied covenant of good faith and fair dealing. In addition to seeking declaratory relief, Motorscope also seeks an injunction preventing Precision Franchising from terminating its agreements, or in the alternative, damages because of the termination. As such, Motorscope claims are not "purely defensive" in nature.

Accordingly, the Court determines that there are no compelling reasons to depart from the first-filed rule and denies Precision Franchising's Motion to Dismiss or Stay this action.

### B. Transfer Under 28 U.S.C. § 1404(a)

Precision Franchising alternatively urges the Court to exercise its discretion under 28 U.S.C. § 1404(a) and transfer venue to the Eastern District of Virginia. Section 1404(a) states, "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The party seeking a transfer ordinarily bears the burden of

establishing that a transfer is warranted. Terra Int'l, Inc. v. Miss. Chem. Corp., 119 F.3d 688, 695 (8th Cir.1997). Initially the moving party must show that the transferee district is one where venue would be proper. See 28 U.S.C. § 1391 (stating that an action can be brought in any district where a "substantial part of the events or omissions giving rise to the claim occurred").

Although the Eighth Circuit has declined to offer an "exhaustive list of specific factors to consider" in making the transfer decision, factors commonly evaluated include the convenience of the parties, the convenience of the witnesses, and the interests of justice. Terra Int'l, 119 F.3d at 691. Courts recognize a presumption favoring the forum chosen by a plaintiff, when the plaintiff resides in the same district as the lawsuit was filed. Travel Tags, Inc. v. Performance Printing Corp., 636 F. Supp. 2d 833, 836 (D. Minn. 2007). Moreover, a motion to transfer an action to another district should be denied unless the balance of factors strongly favors the moving party. See Graff v. Qwest Commc'ns Corp., 33 F. Supp. 2d 1117, 1121 (D. Minn.1999). Precision Franchising argues that venue is proper in the Eastern District of Virginia because a substantial part of the events giving rise to Motorscope's claims occurred at Precision Franchising's corporate headquarters, in that judicial district. (Precision Franchising's Mem. at p. 17.) Precision Franchising also argues that the Eastern District of Virginia is a more convenient forum because it keeps all "its book and records" at its corporate headquarters, all it "key fact" witnesses are located in Virginia, and the Franchise Agreement was written there. (Id. at pp. 18–19.) Further, Precision Franchising contends that the Court should transfer the case because Virginia has a strong interest in the

9

"uniform interpretation of Precision Franchising's franchise agreements . . . [because they are] written in accordance with Virginia law." (Id. at p. 20.)

Motorscope responds that while Precision Franchising may keep its books and records in Virginia, Motorscope runs its business in Minnesota and keeps its books and records here. (Pl.'s Resp. Mem. in Opp'n to Defs.' Mot. to Dismiss, Stay, or Transfer Pl.'s Compl., Doc. No. 14, at p. 28.) Motorscope contends that Precision Franchising had "extensive contacts" with Minnesota, including selling Motorscope a Franchise Agreement and Area Agreement in the state. (Id. at p. 29) Additionally, all of Motorscope's witnesses reside in Minnesota, including an important third-party witness in this case—Lene-Tarango. (Id.) Motorscope also argues that Minnesota's interest in adjudicating this case weighs in favor of keeping the action in this Court because the termination of Motorscope's agreements has a larger impact on Minnesota residents. (Id. at p. 30.)

Even if Precision Franchising could show that venue would be proper in the Eastern District of Virginia, Precision Franchising has not satisfied its burden of showing that the balance of the § 1404(a) factors favors transferring the case. Each of Precision Franchising's § 1404(a) arguments in favor of transferring venue to the Eastern District of Virginia apply with equal force to Motorscope. For example, Precision Franchising argues that the Eastern District of Virginia is a more convenient venue because all of its witnesses and evidence are located there. It is more convenient for Motorscope to try its case in Minnesota, however, because all of its witnesses and evidence are located here. Indeed, "Defendants' motion to transfer this case would merely shift the inconvenience to

the Plaintiff." ComputerUser.com, Inc. v. Tech. Publ'ns, LLC, No. Civ. 02-832, 2002 WL 1634119, at *8 (D. Minn. July 20, 2002). Furthermore, if Motorscope's factual allegations against Precision Franchising are true, its injuries were felt primarily in Minnesota. Likewise, if Precision Franchising's factual allegations against Motorscope are true, its injuries were felt primarily in Virginia. In other words, for purposes of determining venue, the facts giving rise to this cause of action occurred just as much in Minnesota as in Virginia. Both states have an equal connection to the case.

For all of these reasons, the Court finds that Defendant has not carried its heavy burden of showing that the balance of § 1404(a) factors favors transferring this case.

### III. ORDER

Based upon the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Precision Franchising's Motion to Dismiss, Stay, or Transfer Motorscope's Complaint (Doc. No. 2.) is **DENIED** and this action will proceed in this Court.

Dated: October 4, 2012

s/Susan Richard Nelson
SUSAN RICHARD NELSON
United States District Judge